UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
───────────────────────────────────────────────
LONG ISLAND REALTY GROUP VII,

               Plaintiff,               **MEMORANDUM OF DECISION AND ORDER**
    -v.-                                      03-CV-6105 (DRH)

UNITED STATES DEPARTMENT OF HOUSING
& URBAN DEVELOPMENT, ISLAND PROPERTIES
& EQUITY, LLC and NEW LIFE PROPERTIES,
MEADOWS OFFICE SUPPLY CO., INC., PENSION
PLAN & TRUST, and KIM BRANCH,

               Defendants.
───────────────────────────────────────────────

**Appearances:**

**For the Plaintiff:**
**Michael Premisler**
One Old Country Road
Carle Place, New York 11514

**For the Defendant United States Department of Housing & Urban Development**
**Roslynn R. Mauskopf**
United States Attorney
Eastern District of New York
610 Federal Plaza, 5th Floor
Central Islip, New York 11722

**HURLEY, District Judge:**

        Presently before the Court are the motions by: (1) defendant United States Department of Housing & Urban Development ("HUD") for summary judgment dismissing the Complaint and for summary judgment on its counterclaim; and (2) plaintiff Long Island Realty Group VII ("Plaintiff") for summary judgment against HUD. For the reasons stated below, HUD's motion for summary judgment is granted with respect to the Complaint and denied without prejudice with regard to its counterclaim. Plaintiff's motion for summary judgment is denied.

## BACKGROUND

The facts are undisputed unless otherwise noted. Plaintiff is the owner of a parcel of real property located at 94 Little Plains Road, Huntington, New York (the "premises"). On August 26, 1980, the premises, which were then owned by Ann Tinsley, became encumbered by a mortgage in favor of the Prudential Mortgage Company ("Prudential") in the amount of $40,200.00. On August 26, 1980, Prudential assigned the mortgage on the premises to the New York Guardian Mortgage Corporation ("NYGMC"). On December 28, 1982, NYGMC assigned the mortgage on the premises to HUD.

In or about 1983, Plaintiff purchased the premises at foreclosure, subject to HUD's mortgage. The last payment made by Plaintiff on the mortgage was in or about December 1989, causing the mortgage to fall into arrears. In January 1991, HUD assigned the mortgage on the premises to R.F. Norman d/b/a Mortgage Default Service Company ("R.F. Norman") "TOGETHER with all rights and interest in the same." (Decl. of Robert Paikoff, dated January 27, 2005, Ex. 2.) R.F. Norman had previously been awarded a contract from HUD, effective October 1, 1988, to perform mortgage foreclosures on behalf of HUD. Under the terms of the contract, R.F. Norman would be paid $175.00, plus incidental costs, for each successfully completed foreclosure. Once a mortgage was foreclosed, R.F. Norman was required to convey the property back to HUD. HUD maintains that viewing its assignment in conjunction with its contract with R.F. Norman, its assignment to R.F. Norman was for collection purposes only.

R.F. Norman took no action to foreclose on the mortgage and on September 18, 1995, he returned the mortgage to HUD. On August 21, 2001, R.F. Norman reassigned the

mortgage back to HUD.

According to Plaintiff, on November 10, 2003, an auction sale was conducted and the premises was purportedly sold to defendants Island Properties and Equities, LLC and New Life Properties. (Pl.'s Local 56.1 Statement ¶ 15.) HUD contends that it cancelled the sale in January 2004 and "subsequently returned the deposit posted by these defendants." (HUD's Reply Mem. at 1 (citing Decl. of Joann Frey, dated Mar. 2, 2005).)

On November 19, 2003, Plaintiff commenced this action in the Supreme Court of Suffolk County, seeking to discharge the mortgage held by HUD on the premises. In addition to HUD, Plaintiff named defendants Island Properties and Equities, LLC and New Life Properties, "as the successful bidder at the mortgage foreclosure sale." (Compl. ¶ 4(B).) Plaintiff also named defendant Meadows Office Supply Co., Inc., "the holder of a subordinate mortgage," and defendant Kim Branch, "the tenant and current occupant" of the premises. (*Id.* ¶ 4(C)-(D).)

On December 3, 2003, HUD removed the action to this Court. None of the other defendants has answered or otherwise responded to the Complaint. In its answer, HUD asserts a counterclaim for money damages seeking the unpaid principal and interest on the mortgage, as well as reimbursement for unpaid real property taxes and mortgage foreclosure costs. According to HUD, as of January 2005, it has paid real property taxes on the premises in the amount of $81,319.48. (HUD's Local Rule 56.1 Statement ¶ 17.) In addition, the amount due to bring the mortgage on the premises current as of January 1, 2005 is $229,115.34.

# DISCUSSION

## I. Plaintiff's Claim to Discharge HUD's Mortgage on the Premises is Dismissed

### A. The Federal Government is not Subject to a Statute of Limitations When Bringing a Foreclosure Action

It is well settled that the United States is not subject to any statute of limitations unless Congress has explicitly expressed one. *See Westnau Land Corp. v. U.S. Small Business Admin.*, 1 F.3d 112, 115 (2d Cir. 1993); *Capozzi v. United States*, 980 F.2d 872, 875 (2d Cir. 1992). Pursuant to 28 U.S.C. § 2415(a), the United States is barred from maintaining an action for money damages "unless the complaint is filed within six years after the right of action accrues." However, 28 U.S.C. § 2415(c) specifically states that "[n]othing herein shall be deemed to limit the time for bringing an action to establish the title to, or right of possession of, real or personal property."

In *Westnau*, the Second Circuit held that section 2415(a) does not apply to mortgage foreclosure actions brought by the United States. 1 F.3d at 116. The court rejected the plaintiff's argument that a mortgage foreclosure is essentially the collection of money damages and, therefore, section 2415(a) should apply. *Id.* at 114-15. Instead, the court found that "[t]he key language of § 2415(a), 'an action for money damages,' is not normally considered to comprehend an equitable action of foreclosure." *Id.* at 115. Thus, foreclosure actions by the federal government are not subject to the limitations bar of section 2415(a). *Id.* at 116. Accordingly, even if the United States is barred from suing on a note, it may still bring a foreclosure action on the mortgage securing the note at any time. *See UMLIC VP LLC v. Matthias*, 364 F.3d 125, 134 (3d Cir. 2004) ("[T]here is no federally provided statute of limitations period for mortgage foreclosure actions."); *United States v. Begin*, 160 F.3d 1319,

1321 (11th Cir. 1998) (same).[1]

The Second Circuit in *Westnau* also held that mortgage foreclosure actions by the United States are not governed by *state* statute of limitations. *Id.* at 117. The Court adopted the lower court's reasoning that in the absence of a limitations period governing foreclosure actions by the federal government, there "is no vacuum to fill because the ancient rule that the United States is not subject to a limitations period clearly addresses the issue presented." *Id.* (citations and internal quotation marks omitted). Thus, the federal government is never time barred from bringing a foreclosure action because of a statute of limitations. *Id.*

### B. *An Assignee of the United States is not Subject to a Statute of Limitations When Bringing a Foreclosure Action*

In the instant action, the mortgage on the premises originated in 1980 and was assigned to HUD on December 28, 1982. On January 16, 1991, HUD assigned the mortgage to R.F. Norman. On August 21, 2001, R.F. Norman assigned the mortgage back to HUD.

It is well established, and the parties do not dispute, that a mortgage assigned to the federal government *after* the state limitations period has expired against the assignor is time barred on the ground that the claim "was worthless at the time it was assigned." *Westnau Land Corp. v. United States Small Business Admin.*, 785 F. Supp. 41, 44 n.2 (E.D.N.Y. 1992), *aff'd*, 1 F.3d 112 (2d Cir. 1993); *see also FDIC v. Former Officers and Dirs. of Metropolitan Bank*, 884

---

[1] "An action for money damages based on breach of a promissory note is an *in personam* action by which the creditor seeks to recover money from the debtor. A foreclosure action, on the other hand, is not a suit against a debtor. Instead, it is an action *in rem,* a proceeding against the property for the legal determination of the existence of the mortgage lien, the ascertainment of its extent, and the subjection to a sale of the estate pledged for its satisfaction." *Begin*, 160 F.3d at 1321 (internal quotation marks and citations omitted).

F.2d 1304, 1309 n.4 (9th Cir. 1989) ("If the state statute of limitations has expired before the government acquires a claim, that claim is not revived by transfer to a federal agency."), *superceded by statute on other grounds as stated in SMS Fin., Ltd., Co. v. ABCO Homes, Inc.*, 167 F.3d 235 (5th Cir. 1993). The parties agree that when HUD acquired the mortgage on the premises in 1982, the state limitations period had not lapsed and, thus, HUD acquired viable rights. The parties dispute, however, whether New York's six year statute of limitations for commencing foreclosure proceedings (pursuant to N.Y. C.P.L.R. § 213 (4)) applied and expired during the almost ten year period R.F. Norman held the rights to the mortgage. Thus, the discreet issue for the Court to decide is whether the indefinite right to foreclose continued to apply after HUD assigned the mortgage to R.F. Norman or whether that right is reserved strictly to the government.

In support of its argument that the indefinite limitations period continued to apply while R.F. Norman held the rights to the mortgage, HUD relies primarily on the holding by the Ninth Circuit in *U.S. v. Thornburg*, 82 F.3d 886 (9th Cir. 1996). *Thornburg* involved the applicability of section 2415(a)'s six year limitation period to the private assignee of the federal government. In *Thornburg*, a corporation executed and delivered a promissory note to a private bank. *Id.* at 888. The note was guaranteed by the United States Small Business Administration (the "SBA"). *Id.* Upon the borrower's default, the SBA paid the bank the amount due and then assigned its interest in the note, guarantee, and mortgage to the SBA. *Id.* The SBA then assigned the note back to the bank for collection purposes. *Id.* The bank again failed to collect and then reassigned the note to the SBA. *Id.*

The borrowers argued that the state statute of limitations ran out on the note while

6

it was in the hands of the bank and that therefore, the action by the SBA was time barred because a transfer back to the United States cannot revive a time-barred claim. The Ninth Circuit rejected this argument and held that during the period of time the bank held the rights to the note, the federal six-year statute of limitations applied. *Id.* at 892. After discussing several cases that reached the same result, the court ultimately rested its decision on the principle that an assignee of the United States stands in the shoes of the United States.[2] *Id.* at 890-92. Any change to this common law rule, the court found, must come from Congress. *Id.* at 891.

The court further noted that because the assignment to the bank was conditional in that it was for collection purposes only, this situation presented an even more compelling case for the application of the common law rule on assignments. *Id.* Because "[t]he United States did not divest itself of its right to bring an action to collect the unpaid balance of the loan in appointing the [b]ank to act as its surrogate in negotiating with the debtors," the federal limitations period should apply. *Id.* The court rejected the borrowers' argument that the assignment was not conditional because it did not contain any language indicating that it was for the purpose of collection only. *Id.* at 892. Instead, the court found that "[t]he absence of any limiting language in the [assignment] does not affect the nature of the assignment. 'An assignment absolute in form can be shown to be for collection only.'" *Id.* (quoting *Arthur Pew Constr. Co. v. Lipscomb*, 965 F.2d 1559, 1575 (11th Cir. 1992)). In this regard, the court noted that the conditional nature of the assignment was further reflected in that fact that the assignment

---

[2] The court noted that it was only able to find one case that had reached a contrary result. *Thornburg*, 82 F.3d at 891 (citing *Wamco, III v. First Piedmont Mortgage Corp.*, 856 F. Supp. 1076 (E.D. Va. 1994) (holding that the rights conferred by 12 U.S.C. § 1821(d)(14)(A), which governs actions brought by the Resolution Trust Corporation as a conservator or receiver, are personal to the assignor and are inapplicable to assignees of the Resolution Trust Corporation)).

7

"did not authorize the [b]ank to pocket any money it was able to recover." *Id.* Rather, when the bank failed to collect on the debt, it returned the note to the SBA. *Id.*

HUD argues that applying *Thornburg* to the instant case, R.F. Norman, as an assignee of HUD, stepped into the shoes of HUD and assumed all of the HUD's rights, including that of not being bound by any limitations period with respect to bringing a foreclosure action. HUD also submits that *Thornburg* is particularly applicable because as in that case, HUD's assignment of the mortgage on the premises to R.F. Norman was for collection purposes only.

Plaintiff counters that *Thornburg* is distinguishable because its holding was limited to section 2415(a), which provides a six year limitations period on claims for money damages, as opposed to the instant case, where federal law provides no statute of limitations governing foreclosure actions. In that regard, Plaintiff argues that "[t]he distinction between an action to enforce the debt on one hand, and an action to foreclose the mortgage securing the debt on the other, is a key one in [*Thornburg*]." (Pl.'s Mem. at 9.)

Plaintiff also argues that *Thornburg* is inapposite because in that case, the bank only held the note and guaranty for fifteen months after they were reassigned from the SBA. Thus, when the SBA reacquired them, the statutory period to enforce the debt applicable to the bank, as an assignor, had not expired. Rather, the limitations period expired after that assignment, while SBA held the rights. In this case, R.F. Norman held the rights to the mortgage for almost ten years before assigning them to HUD.

The Court finds Plaintiff's distinctions unpersuasive and holds that R.F. Norman, as assignee of HUD, stood in the shoes of HUD and was thus subject to the federal rule that there is no statute of limitations in foreclosure actions. With respect to Plaintiff's latter argument

8

regarding the length of time R.F. Norman held the rights to the mortgage, the holding of *Thornburg* is that the *federal* limitations period applies to a private party assignee of the federal government. Plaintiff's argument that the limitations period expired during the period of time R.F. Norman held the rights to the mortgage presumes the applicability of the state statute of limitations, an assumption the *Thornburg* court expressly rejected.

Furthermore, although *Thornburg* dealt with section 2415(a), there is no reason why the rationale behind the court's holding should not apply equally to foreclosure actions for which there is no federally provided statute of limitations. In fact, at least one other court has agreed. In *UMLIC VP LLC v. Matthias*, 364 F.3d 125 (3d Cir. 2004), a case not raised by the parties, the Third Circuit "join[ed] every other appellate court to consider the issue"[3] and held that pursuant to the common law rule that an assignee stands in the shoes of the assignor, the federal statute of limitations applies in a foreclosure action brought by an assignee of the United States. *Id.* at 131 (citing *UMLIC-Nine Corp. v. Lipan Springs Dev. Corp.*, 168 F.3d 1173 (10th Cir. 1999); *Thornburg*, 82 F.3d at 886; *FDIC v. Bledsoe*, 989 F.2d 805 (5th Cir. 1993); *Tivoli Ventures, Inc. v. Bumann*, 870 P.2d 1244 (Colo. 1994)). Finding that there is no federal limitations period on foreclosure actions, the court held that there was no statute of limitations governing the private party-assignee's right to foreclose. *Id.* at 135.

Accordingly, the Court adopts the reasoning in *Thornburg* and *UMLIC* and holds that R.F. Norman, as assignee of HUD, was subject to the federal rule that there is no statute of limitations in foreclosure actions and, therefore, HUD's time to foreclose on the premises is not

---

[3] Although the cases referred to by the Third Circuit all involved assignments from the federal government to private parties, none of them involved the right to foreclose.

time barred. Thus, Plaintiff's Complaint, which seeks to discharge HUD's mortgage on the premises as null and void, is dismissed as to HUD.

## II. *Plaintiff's Application to Invalidate the November 2003 Foreclosure Sale is Denied as Moot*

In Plaintiff's opposition papers, Plaintiff moves to invalidate HUD's purported November 2003 foreclosure sale of the premises to defendants Island Properties & Equities LLC and New Life Properties because HUD failed to file the statutorily required notice under 12 U.S.C. § 3751. In response, HUD submits the declaration of Joann Frey, Attorney-Advisor with the New York Office of HUD, who states that in January 2004, "HUD canceled the non-judicial foreclosure sale of the premises to co-defendants Island Properties and Equities, LLC and New Life Properties." (Decl. of Joann Frey, dated Mar. 2, 2005, at ¶ 5.) She further states that "[b]y letter dated January 26, 2004, HUD authorized its foreclosure agent . . . to return the deposit posted by these co-defendants at the Commissioner's sale on November 7, 2003." (*Id.* ¶ 6.) Accordingly, because HUD cancelled the November 2003 foreclosure sale, Plaintiff's application is denied as moot.

## III. *HUD's Motion for Summary Judgment on its Counterclaim is Denied Without Prejudice*

In its answer to the Complaint, filed on April 9, 2004, HUD counterclaims for money damages seeking reimbursement for Plaintiff's unpaid principal and interest under the mortgage, as well as for real property taxes and foreclosure costs. The last payment made by Plaintiff under the mortgage was in December 1989.

As discussed above, pursuant to 28 U.S.C. § 2415(a), the United States is barred from maintaining an action for money damages "unless the complaint is filed within six years

after the right of action accrues." Upon first glance, it would appear that HUD's counterclaim is time barred as it was brought well beyond six years from the date Plaintiff ceased making payments under its mortgage. HUD asserts, however, that pursuant to New York law, a separate cause of action accrues on indebtedness secured by a mortgage as each installment becomes due. (HUD's Reply at 4 (citing *United States v. Quaintance*, 665 N.Y.S.2d 191 (4th Dep't 1997).) Thus, HUD submits that it is entitled to damages for Plaintiff's failure to remit mortgage payments dating to April 1998, i.e., six years back from the time HUD interposed its counterclaim.

HUD offers no authority, however, as to why New York law would govern the accrual of a claim under section 2415(a). Moreover, HUD omits an important exception to the New York rule: if pursuant to the terms of the agreement, the creditor accelerates the entire debt upon default, the statute of limitations with respect to all installments begins to run at that time. *See, e.g.*, *Comind Participacoes, S.A. v. Terry*, No. 91 CIV. 3803, 1995 WL 234792, at *1 (S.D.N.Y. Apr. 20, 1995) (applying New York law). Here, there is no information in the record as to whether Plaintiff's mortgage contained an acceleration clause and if so, whether HUD elected to accelerate upon Plaintiff's default. Plaintiff similarly does not address this issue.

Accordingly, HUD's motion for summary judgment on its counterclaim is denied without prejudice. HUD is hereby directed to serve a memorandum of law on or before October 7, 2005, specifically addressing whether federal or state law applies in determining when a cause of action accrues under 28 U.S.C. § 2415(a). If the installment approach applies, HUD shall submit the appropriate documentary evidence in support of its claim. Plaintiff shall serve a memorandum in opposition on or before November 4, 2005; HUD shall serve a reply

memorandum, and file all papers with the Court, on or before November 18, 2005.

## **CONCLUSION**

For the foregoing reasons, HUD's motion for summary judgment is granted to the extent the Complaint is dismissed as against HUD. HUD's motion for summary judgment on its counterclaim is denied without prejudice pending further briefing by the parties in accordance with this decision. Plaintiff's motion for summary judgment is denied.

Plaintiff is directed to inform the Court by October 7, 2005 as to whether it intends to proceed against the remaining defendants, none of whom have appeared in this action.

**SO ORDERED.**

Dated: Central Islip, N.Y.
       September 9, 2005

                            /s
                            Denis R. Hurley,
                            United States District Judge